Civil Action No. **3:18-cv-01617-BN**   Caldwell v. Parker University

| | | |
|---|---|---|
| Daniel Caldwell, Plaintiff | § | United States District Court |
| v. | § | for the Northern District of Texas |
| Parker University, Defendant | § | Dallas Division |

## PLAINTIFF'S AMENDED COMPLAINT

My name is Daniel Caldwell. As the Plaintiff in this case, I file my Amended Complaint against Defendant Parker University, having been granted leave to do so from the Court.

### I. DEFENDANT

The Defendant, previously served summons and having obtained a dismissal without prejudice, is Parker University, represented by Sean Urich and Robyn Funk of the law firm of Ogletree, Deakins, Nash, Smoak & Stewart, P.C.

Sean C. Urich Texas Bar No. 24033287 sean.urich@ogletreedeakins.com

Robyn M. Funk Texas Bar No. 24104415 robyn.funk@ogletreedeakins.com

8117 Preston Road, Suite 500 Dallas, Texas 75225

(214) 987-3800 (214) 987-3927 (fax)

ATTORNEYS FOR DEFENDANT

### II. JURISDICTION

The basis for jurisdiction is a federal question, namely the proper allocation for risk of loss for federal financial aid regulated by the United States Higher Education Act, 20 U.S.C. Sec. 1070 et seq., esp. 1091a and 1091b. Furthermore, I raise Rehabilitation Act of 1973, 29 U.S.C. Sec. 794; and Americans with Disabilities Act, 42 U.S.C. Sec. 202, as incorporated against an entity whose services, programs, and activities receive federal funds; and the 5th and 14th Amendments, as incorporated against such an institution conducting a quasi-criminal proceeding. The Due Process clauses are further implicated by the institution's own published policies as then in

effect, such as "due process guidelines will be followed." (Parker's 2013-14 Student Handbook at 23). Caldwell did not and does not allege Parker acted under color of law by violating due process guarantees, but Caldwell firmly believes instead that Parker fraudulently and tortiously breached a contract implied in fact (agreement with mutual consideration) which incorporated the Due Process clauses expressly, and then lied to government agencies to avoid enforcement.

III. STATEMENT OF CLAIM

It has come to Caldwell's attention that the order of the facts presented in his original petition made the sequence of events confusing, which Caldwell attempts to correct here. Note each statement of fact can now be confirmed in a corresponding exhibit.

On June 20, 2014, defendant Parker University fraudulently expelled plaintiff Daniel Caldwell ("DC") from the Doctor of Chiropractic Program. [Ex. 1]. The dean of student affairs called DC to his office that same day without notice prior to that day of a hearing. [See Ex. 3]. At that hearing, DC was not informed of the allegations against him (sexual harassment and vandalism). [See Ex. 2]

Without due process of fair notice of the allegations against DC nor reasonable opportunity to respond, the committee immediately and permanently dismissed DC from Parker University. [See Ex. 4] On June 24, 2014, before providing DC with the basis for the dismissal, the Academic and Professional Standards Appeals Committee denied DC's appeal, which requested to know, in identifiable terms, what the allegation(s) against him were. [See Ex. 5]

DC had not committed sexual harassment nor vandalism, nor any violation of the Code of Student Conduct. [See Ex. 7]

On June 27, 2014, the university Vice President held that due process was provided, despite lack of notice [of the allegations] and [meaningful] opportunity to respond, and despite the conclusions of the committees being unsupported by facts. [See Ex. 6]

On July 21, 2014, the university Provost held that, in addition to upholding the dismissal, DC would be required to pay $6,444 to Parker University in order to obtain a transcript. [See Ex. 10]

[On August 1, 2014,] DC timely appealed the ruling of the Provost regarding the $6,444 to the university President, who never responded directly. [Ex. 11].

DC sought review by the Texas Higher Education Coordinating Board and by the Department of Education. [Ex. 12] [After being contacted by the THECB,] Parker University offered to pay $2,556 and to release DC's transcript in exchange for a waiver of all claims. [Ex. 13]

When DC requested clarification and made a counter-offer, Parker University withdrew the offer to settle. [Ex. 14]

The Office of Civil Rights later determined that retaliation for protected free speech is not discrimination. [Ex. 15]

Amended Complaint - Jury requested        2   D. Caldwell, Pro Se and In Forma Pauperis

For clarity, Caldwell incorporates the Court's explanation of the Background as contained in its order except to the extent necessary to correct apparent misunderstandings of key facts:

Caldwell alleges that, on June 20, 2014, Parker "fraudulently expelled [him] from the Doctor of Chiropractor Program without notice [...] of the allegations against him (sexual harassment and vandalism)." Dkt. No. 3 at 4.  [Caldwell] further claims that, "[w]ithout due process of fair notice of the allegations against [him] nor reasonable opportunity to respond, [a committee at the university] immediately and permanently dismissed [him] from Parker." Id. This decision was upheld by a vice-president at [sic] the university and Parker's provost [and "the university President, who never responded directly".] See id. Caldwell was informed that he would have to pay $6,444 to obtain his transcript from Parker. See id. And Caldwell alleges that he unsuccessfully sought relief from the Texas Higher Education Coordinating Board and the U.S. Department of Education. See id. Caldwell asserts that these facts support claims (1) for violation of due process under the Fifth and Fourteenth Amendments and (2) under the United States Higher Education Act, the Rehabilitation Act of 1973,and the Americans with Disabilities Act. See id. at 3. And he further states that, "[i]n addition to the claims of violation of federal regulations which resulted in Parker's dismissal of [him] and refusal to release [his] transcripts, state law grounds for awarding damages include breach of contract, fraud, or quantum meruit and refusal to mitigate damages." Id. at 5.

Dkt. No. 24 at 2 (redacted).

As an additional key fact which appears to be necessary, Caldwell adds that, at the time of the dismissal, Caldwell had a zero balance owed to the university.  Instead, the university food

services, bookstore, and massage school accounts under Caldwell's name had hundreds of dollars of credits which had all come from federal funds.

Caldwell further adds that it was the university's untimely and improper dismissal which led to the university unilaterally initiating a 20 U.S.C. 1091b Institutional Refund of $6,444. If Caldwell voluntarily withdrew, there would be no controversy; Caldwell would be liable. The law appears unclear as to whether Caldwell should be liable if his expulsion was for-cause. The intent of Congress would certainly not allow an institution to push liability onto a student dismissed involuntarily and without cause.

Here, Caldwell denies any alleged misconduct and asserts the dismissal occurred without a legitimate nondiscriminatory reason. Caldwell asserts the expulsion was disparate treatment and retaliation for exercising protected first amendment rights (i.e., circulating a petition, running for student body office, sharing a picture of a sleeping security guard in uniform on Facebook), with the then-unspecified and later-manufactured claims of sexual harassment and vandalism as a false pretext for the expulsion. Caldwell further notes that Caldwell had previously reported one of the committee members (who went undisciplined) for recklessly damaging university property by putting a hole in a classroom wall approximately 18"x24".

Caldwell notes having only recently learned that the THECB facilitated 2015 offer made by Parker was an estimate of Caldwell's DTPA consumer "economic damages" for the 2014 term only. Parker apparently sought to settle without explanation or compensation for Caldwell's "actual" damages, then estimated as the value of tuition credits that Caldwell could not transfer.

Caldwell also notes the Dept. of Education concluded Caldwell's discrimination claim qualifies as a prima facie case for the McDonnell Douglas burden shifting framework, which supports a finding of discrimination under the RA and ADA. However, Caldwell diverges from

their analysis when considering whether the university provided a legitimate nondiscriminatory reason for the expulsion (disparate treatment) because their facts as recited contradict Caldwell's evidence.

Caldwell alleges in good faith that Parker provided false answers to the Dept. of Ed. investigation in order.

IV.  RELIEF

As a result of attendance at Parker University, DC has outstanding student loan debts of $64,319, notated below.  [as of service of summons]
This debt is a fair and approximate representation of the actual, direct, and consequential damages caused by Parker University acting in bad faith, and DC asks that this court order Parker University to pay this amount.
In addition to the claims of violation of the federal regulations which resulted in Parker's dismissal of DC and refusal to release DC's transcript, state law grounds for awarding damages include breach of contract, fraud, or quantum meruit. and refusal to mitigate damages.
The $64,319 amount includes moneys received and held by Parker University for academic credit which DC earned but which Parker University prevented DC from transferring in order to apply to any degree or licensure.
This amount is less than DC's net [actual] damages suffered as a result of lost time and opportunity caused by Parker's refusal to allow transfer of credit from 2013-2014, but is an appropriate estimate to avoid speculation.
This amount does not include exemplary or punitive damages that the court may determine are appropriate:
Direct Unsubsidized Loan, Date Sep 2013, Disbursed $33,000, Principal $35,013, Interest $6,518, % 5.410 Total $41,531
Direct Unsubsidized Loan, Date May 2014, Disbursed $9,987, Principal $10,317, Interest $1,921, % 5.410 Total $12,238
Direct PLUS Loan, Date Sep 2013, Disbursed $8,051, Principal $8,637, Interest $1,913, % 6.410 Total $10,550
Status DA, Servicer DEPT OF ED/GREAT LAKES

Caldwell here estimated the amount of actual damages as the value of the federal student loan indebtedness incurred as a doctor of chiropractic student at Parker University, from which no academic credits now appear to be transferable according to the school's accrediting body.

Amended Complaint - Jury requested         5  D. Caldwell, Pro Se and In Forma Pauperis

Without being able to afford an attorney to bring suit within the two years under the DTPA, Caldwell now must rely on common law fraud, quantum meruit, and contract rather than statutory damages for Parker's violation of Texas Business and Commerce Code Sec. 17.46.

RELATING BACK TO FILING

As a pro se, Caldwell requested additional time to respond to Parker's Motion to Dismiss.

The three-month extension was not previously anticipated to be necessary in Caldwell's earlier request for extension, which sought 14 days, but which should have sought 90.  See Dkt. No. 22.  Caldwell includes his response herein, ensuring he will request no additional extensions.

The deadline initially set by the court on 7/26/2018 for filing Caldwell's response was 8/27/2018, extended to 09/10/2018, which has passed, so this pleading is late.  See Dkt. No. 23.

To explain, in Caldwell's 08/28/2018 request for extension, he described activity required in other state and federal trial courts and a Texas Supreme Court case (each involving ongoing deprivation of fundamentally important civil, marital, and parental rights, respectively) of more urgent kinds than Caldwell has alleged to be at issue in his complaint against Parker.

After that motion was granted, opposing counsel in one of Caldwell's other cases also surprisingly asked on 08/31/2018 for a 90-day extension on the Tex. R. App. P. 38.6 deadline:

"I am going to need an extension for filing Appellee's brief in the case before the 3rd Court. Because of my trial, conference and professional development schedule over the coming months, I plan to ask the court for a 90 day extension. Do you have any objection to this request?"

Caldwell offered a 30-day extension to the 30-day timeline, but opposing counsel still motioned for extension until 12/13/2018, and Caldwell was obliged to file a response on 09/06/2018.  Opposing counsel in that case replied by letter, so Caldwell filed another response on 09/11/2018.  Meanwhile, Caldwell has also struggled to keep up with his classes, missing deadlines for three of his courses in the same period despite diligent efforts.

Amended Complaint - Jury requested           6  D. Caldwell, Pro Se and In Forma Pauperis

Caldwell asked opposing counsel, Sean Urich and Robyn Funk, about his need for extension, but their Fri, Sep 14, 9:13 AM response was negative, in opposition.

In consideration of the opportunity to amend that the Court granted, Caldwell does not object to allowing Parker the same amount of time to reply to Caldwell's Amended Complaint.

The purpose of this requested extension is not for delay, but so that Caldwell may obtain consideration of the actual merits of his timely complaint to avoid summary dismissal.

RESPONSE TO DEFENDANT PARKER UNIVERSITY'S MOTION TO DISMISS

Defendant's first responsive issue argues that the Higher Education Act (HEA) does not provide a private cause of action.  Caldwell cited in his earlier motion to extend on-point cases from two circuits where suits were brought by private entities seeking to avoid enforcement of the HEA, Coalition of New York State Career Sch. v. Riley, 129 F.3d 276 (2nd Cir. 1997) (citing Career College Ass'n v. Riley, 82 F.3d 476 (D.C. Cir. 1996)).  See Dkt. No. 23 page 4.  Logically, if private actors may sue to enjoin the statute's enforcement against them (despite ultimately losing when reversed on appeal), Caldwell also may bring suit asking the court to enforce the statute against Parker.  To those 20+ year old cases, Caldwell then adds the more recent case of Brooks v. Sallie Mae, Inc., 2011 Conn. Super. LEXIS 3182, 2011 WL 6989888, also brought by a private plaintiff, seeking enforcement of the CUTPA, and where the court reconciles the HEA.

Caldwell asks this court to rule consistently with these courts, and to hold that the 20 USC Sec. 1091b "Institutional refunds" provision of the HEA is enforceable against Parker.

Furthermore, if Caldwell may not sue on an Article III Section 2 case upon exhaustion of administrative remedies where the federal administrative agency specifically here advised Caldwell he "may have the right to file a private suit in federal court"  (Dkt. No. 22-1), then the constitutional right to invoke the judicial review power must be void, being utterly frustrated.

Amended Complaint - Jury requested          7  D. Caldwell, Pro Se and In Forma Pauperis

Specifically, Caldwell hopes to show that novel federal question issues govern subject matter jurisdiction, i.e., does 20 U.S.C. 1091b "Institutional refunds" (as in effect) require that a school may not hold an involuntarily withdrawn student liable for the refund -- creating a new balance owed by the student after withdrawal -- in order to deny transcripts?

1. Although the 5th Circuit has not reached this statute, guidance on this issue is found in [Coalition of New York State Career Sch. v. Riley](#), 129 F.3d 276 (2nd Cir. 1997) (citing [Career College Ass'n v. Riley](#), 82 F.3d 476 (D.C. Cir. 1996)).

2. If a school may not create a new balance after involuntarily withdrawing a student--where none was owed--then Parker's attempt to collect the refund from Caldwell by denying his transcript (with which to transfer) creates a cause of action stemming from the statute.

Defendant's first responsive issue argues in the alternative that Caldwell fails to plead facts to support his claim.

3. Parker is not new to complaints of unlawful discrimination.  See 3:01-CV-2277-N Dkt. No. 82 at 4-11, 14.


Respectfully submitted,

/s/ Daniel Caldwell 9/17/2018

## CERTIFICATE

I certify that this Amended Complaint and attachments are being electronically filed thru the Court's CM/ECF electronic document filing system.   /s/ Daniel Caldwell 12/19/2018

Amended Complaint - Jury requested          8  D. Caldwell, Pro Se and In Forma Pauperis