# PARKER
UNIVERSITY

Date:   Friday 21 June 2014

From:   Daniel Caldwell, Tri-3 student

Thru:   Victor Ballesteros, Dean of Student Affairs

To:     Academic and Professional Standards Appeals Committee

Re:     Letter of Appeal

Cc: Members of the Academic and Professional Standards Committee (just those whose names I recall); Faculty/staff who I regard as mentors personally interested in my success, and whose feedback I invite for revisions if you are able to contribute something before my appeal is forwarded on Monday to the Dean of Research, Vice President of Academics, and Director of Clinics

## STATEMENT OF CASE

I am appealing the determination rendered today which states in part, "The decision of the APS committee was that you did violate the Student Code of Conduct."

As you may expect and certainly understand, I most definitely have to contest the verdict.

The committee having been both announced and held today to review accused violation of guidelines (E) and (I) on page 21 of the Student Handbook, I submit this Appeal pursuant to the procedure on page 23 of the same.

Per the guidelines indicated, the obvious reasons for my appeal include that, so far as I am aware:

1-I did not physically abuse anyone;
2-I did not assault anyone;
3-I did not verbally abuse anyone;
4-I did not threaten anyone;
5-I did not intimidate anyone;
6-I did not harass anyone;
7-I did not coerce anyone;
8-I did not endanger the health or safety of anyone;
9-I did not attempt to steal anything;
10-I did not actually steal anything;
11-I did not attempt to damage anything; and
12-I did not actually damage anything.

That covers everything the hearing was set for, so I have to ask, why, then, am I expelled ("immediately and permanently dismissed")?

## DISCUSSION

The following reviews the discussed facts to my best recollection.

For unintentionally aggravating the memory of past emotional or mental harm in a highly sensitive classmate by (co)incidentally placing my hand on her shoulder as I brushed by between her and the wall while on the way to my seat, I am dreadfully sorry, of course, having had no clue it would be regarded in the exact same light as stabbing her with a butcher knife.

We had not talked to each other much with about a hundred other people in the class, and I did not imagine this encounter I might not have otherwise taken note could be so atrociously

escalated.

The last prior communications I recalled or have record of specifically to/from her were about her inviting me over to have dinner with her family February 9th (We did not manage to connect for dinner.), then expressing concern for missing class April 1st, and her offering to share her lunch with me one day last week, so prosecution on this incident comes as an astounding shock, of which the outcome is nevertheless more surprising.

Upon being reminded and reflecting, I did recollect her telling me not to touch her previously, but could not say when that was besides more than 2 months ago, more likely 3-4 since I moved my spot to the opposite side of the room to make more space away from a different classmate around that time frame.

Forgetting that instruction while I still do not know all my classmates' names does not justify expulsion.

My failure in that instance to clearly say "Excuse me" and wait for her to move while instead doing what I would have considered a courtesy of trying to avoid interrupting her conversation or bumping or startling her does not justify expulsion merely because I now know a different approach would have been preferred.

For any accidental scratches to an iron garden chair (less impact than if it had been simply knocked over, I am sure) that resulted from waving it over the magnetic sensor to open the North gate exit to go home, I will offer to pay for buying the chair, and this does not remotely justify expulsion.

Other incidents addressed were:
-Someone reported that my propping an exercise ball I sit on in class into a corner (momentarily on the door's closer) outside the door to East 108 when maintenance locked and would not open the door so I could drop the ball off looked like I may have been trying to break-in, a misperception that does not justify expulsion; and
-Someone questioned whether the running shorts with an inner lining that I wore for the diversified adjusting practical, which were interchangeably "tennis shorts", complied with the Student Dress Policy on page 51, and this does not justify expulsion.
(Note: The shorts extend past finger-length when standing upright although shorter than what I typically wear and would definitely not be confused with form-fitting or speedo style gym shorts.)

Without wanting to offend the participants, the hearing felt more like sitting before a committee of interrogators or prosecutioners than a jury who had not made up their mind yet.

REQUEST TO CONTINUE ACADEMICALLY PENDING APPEAL

Furthermore, I complain of the unilateral ruling(s) by the Dean of Student Affairs that prevent my returning on-campus for classes, clinic, and on-campus events while the appeal is pending as unsupported:
1. The appeal has not been made according to the conditions in the decision letter;
2. The presence of the student in University activities constitutes a disruptive influence on the educational process or to patient care activities;
3. The presence of the student is considered to be a danger to the health, safety and welfare of the student or other students, faculty and staff. (p. 23-24)

In-re point #1, such a ruling was also previously made with regards to the appeal submitted electronically Sunday, April 20, 2014 5:03 AM and physically date-stamped on Tuesday 20 April, but never forwarded to the Academic and Professional Standards Appeal Committee to be affirmed, modified, or rejected.

In-re point #2, I should challenge any claim that I have not made every effort, and reasonably succeeded, to be an exemplary student, actively participating and accommodating

PARKER
UNIVERSITY

requests to change my habits to suit others' preferences.

If some condition is placed on my returning to class, such as standing in the far back of the room for the remainder of the term, I would be obliged to do so in recognition of continuing enrollment as a privilege I have been striving to earn every day.

In-re point #3, there is no history of malice, violence, or instability to indicate that I would be a danger to the health, safety, or welfare of anyone.

## PRAYER

I respectfully ask that the appeals of each part of the APS committee decision be upheld and for timely re-instatement.

Thank you for your consideration.


DC
DCaldwell@Parker.edu
512-761-5740
Striving to Serve