D/T:   Monday 7 July 2014 (will call to verify receipt)

From:  Daniel Caldwell, # 71065, 512-761-5740, DCaldwell@AggieNetwork.com

Re:    Written appeal from recommendation by Vice President of Academic Affairs

To:    Dr. Gery Hochanadel, Provost

Cc:    Dr. Celia Maguire, VP of Academics
       Mr. Victor Ballesteros, Dean of Student Affairs

Dear Sir:

The purpose of this letter is to appeal pursuant to page 122 of the DC Program catalog from the ruling by Dr. Celia Maguire made on Friday 27 June 2014 (submitted within 5 business days), under obligation to defend my professional prospects and reputation.

Dr. Maguire's letter made only a default recommendation for resolution of my complaints against Mr. Victor Ballesteros regarding adherence to the standards for handling the Academic and Professional Standards Committee and subsequent appeal, effectively upholding his decision to dismiss me immediately and PERMANENTLY with the "determination that Mr. Ballesteros acted in accordance with our policies". This recommendation is NOT appropriate because Mr. Ballesteros' actions were neither 1) "administration of justice" nor 2) "according to established rules and principles".

Appropriate final decisions would include:
1- Direction to amend the procedures used to inform accused students of the specific accusation(s) and evidence/testimony against them at the beginning of Academic and Professional Standards Committee hearings;
2- Direct reinstatement (either for current term or transferring summer tuition to the fall);
3- Direction to apologize for the inequitable treatment; and
4- Remand for a new hearing.

With regard to the first reason the recommendation is not appropriate, sustaining the wrongful expulsion is not justice (fair) because, even if I had committed a violation (which I did not), any of the other disciplinary actions on p.114 (written reprimand, probation, discretionary sanctions, or suspension) should have first been implemented since I had no previous violations, and the allegations did not even claim any real harm.
Resorting first to the maximum penalty is imbalanced and extreme defamation of character. Insofar as there will be an investigation which reviews all documents previously submitted, I ask that I be contacted for any questions that arise and for opportunity to be able to discuss a verbal summary of the appeal before a final decision is rendered.

With regard to the second point, established principles in this country include among others the rights of the accused "to be presumed innocent until proved guilty" (UN Universal Declaration of Human Rights article 11 et al) and "to be confronted with the witnesses against him" (Amendment VI of the US Constitution), neither of which was I granted.

Also with regard to the second point - established university rules - Dr. Maguire determined that Mr. Ballesteros acted in accordance with policy despite his failure as chair of the Academic and

Professional Standards committee to "a) advise[] of the charges, b) give[] the opportunity to respond to the charges and c) present documentation and/or witnesses to support [my] response" (page 119) and then, when notified of my intent to appeal (in a non-signed letter that on its face was a draft requesting information for revisions), continued failure to perform these duties prior to obtaining another same-day prejudiced decision of the Academic and Professional Standards Appeal Committee to deny appeal as provided on page 120 before I was provided a record of the accusations.

A) On Friday 20 June, at no point was I informed that the accusation (charge) against me was discriminatory or "sexual harassment" (per the Report Intake Questionnaire) which is not any of the (at least 8) interpretations indicated by the vague language of bullet "I" on page 117 which implies willful violence, rather than the offences described at length on page 54.
Additionally, the similarly vague charge E. "Attempted or actual theft and/or damage" clearly implies vandalism where there was none.
Furthermore, the same-day electronic notification of a hearing received less than an hour beforehand was attached to a message (to which my access has been terminated) saying it would be held "tomorrow" (Saturday) and I only coincidentally stopped at the Student Affairs office to ask about it when my lunchtime meeting with Elgrie Hurd ended, so I challenge that notice as inadequate to satisfy the requirement of p.119 second bullet "2. The student(s) will be notified in writing..."
B) As a result of not being permitted to hear testimony against me or see documents submitted, nor informed as to what the accusations were, I could not present direct response to the charges beyond a general denial of guilt or recollection of details when reminded/prompted.
During the hearing, I was interrogated by a half dozen committee members who seemed to have their minds made up before I walked in.
They asked if I ever recalled Jennifer Castile-Powell swearing at me, but I did not.
I was taken aback by the question, "Do you know right from wrong?" especially since asking this the way she did implies the instructor had already decided her verdict.
They showed me a couple pictures of me and an old metal chair outside and told me there were other incredible claims made that I recklessly "flashed" women in my class and tried to break into a classroom by removing a ceiling tile, but they would not let me see what was reported.
C) As a result of not knowing before-hand of the hearing or the accusations, I could not so much as prepare a statement or exhibits, bring my laptop on which to access Student Handbook references or communication records which would have been helpful, or locate classmates able to serve as witnesses in my defense.

Returning briefly to the merits of my defense to the first charge, nothing in my conduct was sexual, abusive, assaultive, threatening, intimidating, coercive, harassing, or endangering.
Although on June 17th I did touch Jennifer Castile-Powell's upper back as I passed between the wall and Jennifer to get to my seat, there was no logical reason to believe she would regard it as inappropriate, provocative, or offensive.
My thought process was to avoid the risk of bumping her with my elbow, shoulder, or hip, and as a courtesy to avoid interrupting her conversation (which apparently would have been preferred).
The last times I recalled talking to her, she had offered to share her lunch (fish, I declined); before that, I had added her (and 11 friends) to the class Facebook group Dr. Russell told us to join for posting course-related discussions (screenshot at end for verification); April 1st, she had asked me via email about why I had to miss class (not accessible); and in February, she had invited me to have dinner with her family (Facebook screenshot provided to Dr. Maguire, Parker email not accessible) and given me her phone number (although I do not dare call that now).
I note that in her most recent claim of having told me not to touch her April 3rd or 4th, this was impossible since I was required to be off-campus both of those days.

Upon being reminded by Mr. Ballesteros, I remembered Jennifer saying something to that effect in the winter when I was still sitting on the same (south) side of East-108, but I had not done so since early April.
If published, I am confident the minutes of the hearing would support my assertions, and I again request to examine them to verify individual quotations that would support my appeal.

In regard to the second charge, I did not attempt to nor actually steal or damage anything.
The chair that Mr. Larry Stamps (security officer) indicated I scratched had visible wear and several scrapes from bumping against neighboring chairs, tables, and landscaping, so any marks attributable to my use are negligible.
As shown in the pictures, I lifted and set the chair on the sensor to avoid scratching the frame, demonstrating in the process an additional feature not previously observed.
Additionally, damage means "harming so as to impair value, usefulness, or function", and no loss in any of these measures was incurred except by the chair's removal to warehouse space, which operation eliminated its intended usefulness and designed function for sitting.
Meanwhile, I am led to believe that Mr. Stamps is biased against me in significant part due to my circulating a petition to raise the issue to address two problems that make him look bad and developed since the new security company took over: campus buildings are/were being locked in the afternoons when still occupied with classes still in session, and the main Walnut Hill gate is/was locked until an hour after classes start rather than 10-30 minutes before-hand so students can enter the campus.

Again sir, I appeal to you for correction of Mr. Ballesteros' failure to provide the required due process and for the opportunity to clear my good name.

Respectfully,

Daniel Caldwell
11029 Shady Trail # 126
Dallas TX 75229

