# STUDENT FORMAL COMPLAINT FORM



*Please provide the requested information so that Parker University can properly investigate and resolve your complaint. You are not limited to the space provided and may attach additional pages as needed.*

Name <u>Daniel James Caldwell</u>      Student ID <u>71065</u>      Tri-<u>3</u> (before expulsion)

Phone Number (512) 761-5740      Email Address <u>DCaldwell@AggieNetwork.com</u>

A.  **Complaint** – Please separately list your complaint(s), with the relevant date(s), and identify the person(s) about whom you are complaining:

1. In the letter sent 18 July 2014, the Provost demonstrated/propagated abuse of discretion by refusing to acknowledge or grant proper requests to:
   a. Permit me "to examine [the minutes]" as an educational record, which was previously denied by the VP of Academics and Dean of Student Affairs;
   b. Have hearing "to be able to discuss a verbal summary of the appeal before a final decision is rendered";
   c. "clear my good name" by correction of the record; and
   d. Address "being able to transfer any of the credit from my time at Parker to another institution" with release of my transcript.
2. According to their letters, Dr. Maguire's and Dr. Hochanadel's judgments of the appropriate recommendations were not based on the merits of the case for my dismissal (or lack thereof, as it were), but only on the question of whether I could prove an administrator (Mr. Ballesteros) blatantly violated the most liberal interpretation of the policy and procedures regarding student conduct, rather than including consideration for the more important and fundamental matter of whether examination of the evidence presented made clear that there was neither probable cause nor even reasonable suspicion to believe that I broke the Student Code of Conduct as charged to comprise good cause for expulsion.
3. Neither the Provost nor other university staff returned any of my phone calls or satisfactorily respond to my emails (except a confirmation of receipt by his executive assistant) sent in order to confer and cooperatively attempt informal resolution without need to escalate the complaint further.

B.  **Evidence** – Please identify and attach copies of all letters, notes, memos, diaries, calendars, reports, or other documents or items that support your complaint(s):

1. Monday 16 June, 3:13 PM, Email from Larry Stamps with attached pictures
2. Tuesday 17 June, Redacted questionnaire by Jennifer Castile-Powell
3. Thursday 19 June, unsigned APSC notice of meeting (emailed Friday 20 June, 6:56 AM)
4. Friday 20 June, Redacted witness statement regarding the incident with Jennifer Castile-Powell
5. Friday 20 June, APSC decision letter, signed
6. Friday 20 June, unsigned emailed draft Letter of Appeal seeking to explain basis of expulsion
7. Monday 23 June, Student Formal Complaint Form, signed
8. Tuesday 24 June, Student Records Request, signed
9. Tuesday 24 June, notification of APS Appeals Committee decision
10. Friday 27 June, Recommendation letter from (interim) VP of Chiropractic
11. Monday 7 July, Written appeal from recommendation by Vice President
12. Thursday 17 July, Email to Provost re: Formal Complaint
13. Friday 18 July, Provost decision letter
14. Tuesday 29 July, Email to Provost re: Transcript

1/4

C. **Witnesses** – Please identify all individuals who know about the incidents you listed in Section A:
1. Gery Hochanadel
2. Mitchell Hadley

D. **Describe Attempt to Solve as Informal Complaint**
   I. Unanswered calls

   Pursuant to the instructions on page 24 of the Student Handbook and according to my telephone records (2:52 PM Thursday 17 July, 4:14 PM Friday 18 July, 1:00 PM Monday 21 July, 9:25 AM / 2:00 PM Friday 25 July, 9:44 AM Wednesday 30 July, 1:08 PM Thursday 31 July), I attempted to call and speak with the university provost on at least 6 different days leading up to this complaint without even 1 successful connection.

   I was told to pay $6,444 for release of my transcripts although my accounts were in good standing when dismissed and I did not take any action to incur the new charge, for which I should not now be suddenly liable.

   II. Brief background

   With minimal repetition of the history of the case, there was a kangaroo court APS hearing on Friday 20 June of which I could not have been aware prior to that same day and only appeared because, as an active student organization president, I regularly visited the Student Affairs office to check the club mail box, ask questions, or share ideas during the lunch break.

   Because the charge listed a dozen potential offenses and I was not informed how the incidents in question were supposed to comprise violation of the cited policies, nor was I permitted to prepare a statement in my defense, I promptly emailed a notice Mr. Ballesteros of my intent to appeal requesting advice from faculty/staff mentors and asking for an explanation of the accusation.

   That explanation was provided simultaneously with a letter stating my incomplete appeal was already denied.

   Because this series of events represented breach of due process by to the Dean of Student Affairs and because the facts in the documents presented against me do not provide the elements for probable cause ("merit" per p.119 of the catalog) to believe that I committed the charged offenses of violence to person(s) and property suggesting a crime of moral turpitude, I complained to the VP of Chiropractic (per p.122 of the catalog).

   Finding that Dr. Maguire's recommendation upholding the dismissal was inappropriate as having been "administration of justice according to established rules and principles" and that it did not address the insufficiency of evidence to believe I committed wrongdoing as alleged, I appealed to Dr. Hochanadel, again explaining that due process had not been provided and that the facts do not imply I actually, substantially, or even vaguely broke the Student Code of Conduct.

   Astonished by the refusal to acknowledge the injustice of defaming unsupported accusations followed by immediate and permanent dismissal which disenfranchises me from even being able to transfer to another institution, coupled with failure to communicate openly and that this appeal was again denied, I have to counter that the Provost's determination constitutes continuing abuse of discretion.

   III. Examination of the evidence in section B
   1. First exhibit

   Mr. Stamp's email claims I "had taken one of the steel courtyard patio chairs and was dragging it across the blacktop" in a reckless or destructive manner which scratched and damaged it.

   Looking at the pictures, if this were the case, then there would be abrasive patches of removed paint corresponding to where the chair would have been in contact with the ground as seen on the pictures.

   Rather, the few minor dings visible (especially the largest ones) match up more in line with where the chair would have scraped against its neighboring chairs and where the paint would have been bluntly chipped away from being shoved in against the table during the year, which is reasonable wear and tear along with residual sun and rain exposure.

   Since no real "damage" (injury or harm which impairs value, function, or usefulness) occurred, and no misconduct or malicious intent apparent, there is not even a basis for "reasonable suspicion" anything more than a "hunch".

In reality, the security department was biased against me for having once taken a picture of an officer who had dosed off in the parking lot and sharing it with classmates in a private forum, followed by circulating a petition calling for correction of complaints regarding classroom buildings and gates being locked when supposed to be open for classes in session.

2. Second exhibit

In terms of legal evidence, Jennifer Castile-Powell's complaint of "unwanted" or "inappropriate" touch does not provide a factual basis of details for "reasonable suspicion" of either harassment or sexual conduct, and so the witness statement (fourth exhibit, which was not yet available when the charges were made nor the hearing scheduled, but which is presumed to have been verbally provided prior) describing the incident must be used to infer a) the motive and b) the region, respectively, for the indicated physical contact to determine if either element can be reasonably ascribed.

3. Third exhibit

The APSC notice dated for the 19th invalidates from admissibility for consideration in the charges those documents which were not at least either prior to the notice or germane to one of the incidents for which indictment was laid.

Furthermore, failure to even send the notice at least before the day of the hearing should have been grounds alone for remand or reversal of the decision by the APS Appeals committee.

4. Fourth exhibit
    a) Does the redacted witness statement provide reasonable suspicion for a motive of harassment (or any other devious course)?

He or she (whichever the case) states, "I have always witnessed DC to respond to the wishes of his classmates when they were expressed. It is my personal opinion that many students complain but do not always tell DC to his face that they do not want to be palpated or that their personal space is invaded. My personal experience is that I only had to ever tell DC once that I do not like to hug. He has respected my personal wishes from the very beginning. We often fist bump or high five if we greet each other."

From this testimonial to my character, we see that I am friendly and outgoing to the point that it does bother some people, but that I cater to other's communicated wishes.

So no, harassment as a motive is not reasonable suspected

    b) Does the redacted witness statement provide reasonable suspicion for sexual nature of conduct?

S/He further said "[I] approached [them] as [I] said good morning [I] put [my] hand on the back of [Jennifer's] neck. She very quickly and sternly said, 'Don't touch me!' [I] quickly removed [my] hand and walked away. [Jennifer] continued to tell [them] that she has trauma from her past with people touching her and was very upset."

The direction of travel being unspecified leaves 2 options: either I approached and retreated or I brushed against Jennifer in passing, neither of which implies sexual conduct nor a harassing motive.

Putting a hand on the back of her neck would not be sexual, just as her emotional association of the event with sexual abuse from PTSD does not make claiming this as sexual harassment reasonable.

Furthermore, Jennifer's obesity would make targeting her for sexual advances grossly unthinkable surrounded by dozens of far more readily approachable and attractive female students.

If almost any of the other female classmates made the accusation of sexual harassment, the claim might have a leg to stand on in terms of physical appeal, but her?

Utterly ridiculous!

So no, even when supported by the redacted witness statement, Jennifer's claim of sexual harassment comes from naught more than an inchoate and irrational hunch.

5. Fifth exhibit

The APS decision lists 12 crimes punishable under the Texas Penal Code which constitute Defamation *Per Se* if in all cases no probable cause (or as discussed, even reasonable suspicion) exists.

Dismissal on this basis is grounds for unpleasant litigation, which appeals and internal complaints of abuse attempt to avoid by providing the institution every opportunity to correct administratively.

6. Sixth exhibit

My emailed letter is on its face an incomplete draft (not signed) and addressed to multiple recipients for the clear purpose of trying to communicate gaps in understanding and request advisement before a final "perfected" (completed or finished and signed) was reviewed.

Specifically, I asked after listing the 12 indicated infractions which one(s) I was believed to have committed, "why, then, am I expelled ([…])?"

Additionally, I called the Student Affairs office on the morning of and in the afternoon on Monday 23 June to verbally inquire what was required to obtain that information and confirm my emailed inquiries were received.

7. Seventh exhibit

The complaint against Mr. Ballesteros was filed before I had the additional cause for action and grievance of him submitting the partial appeal for rejection as a final appeal, which occurred prematurely and if properly handled would have prevented and forestalled this elevated complaint to the President of the Provost also exercising an abuse of discretion.

8. Eighth exhibit

I expected the redacted minutes of the APS (and later APS Appeals) committee to be included in the file provided, but it appears those would only be released under court order via the civil procedure process of "discovery" with the assistance of legal representation.

9. Ninth exhibit

The APS Appeals Committee decision again failed to answer the question, "why, then, am I expelled ([…])?"

10. Tenth to fourteenth exhibits

The remaining items are believed to be self-explanatory and to have been already addressed.

E. **Desired Outcome** – Please state what action(s) you feel are appropriate to address the concerns you identified in Section A:

1. The University should reimburse to the financial aid lender the full cost of the summer term tuition and fees and release the hold on my transcripts.
2. Reinstatement with a credit for the cost of tuition and fees for the fall in reparation of the unjustified actions taken against me.
3. The University should amend the catalog p.119 by inserting "At least the day before-hand," at the beginning of bullet 2 and by inserting "specific" before "charges" in bullet 3 in order to prevent prosecution without the accused even being clearly informed of the accusation(s) against him/her.
4. An apology for defamation, dismissal, and disenfranchisement.
5. Any/all other just and equitable relief.

_____          ___Friday 1 August 2014_____
Signature                                Date

_____          _____
Parker University President              Date Received

Revised: 1/12

4/4