# Re: 06152021 complaint against Parker University

**Beattie, Chester** <Chester.Beattie@thecb.state.tx.us>  Mon, Dec 15, 2014 at 11:14 AM
To: Daniel Caldwell <dcaldwell@aggienetwork.com>

Daniel:

General Counsel Bill Franz and I met with General Counsel Raif Calvert of the Independent Colleges and Universities of Texas. We provided him a briefing and a Notebook with the materials you sent and I prepared that describes your complaint. It was a productive and professional meeting.

What may be helpful to General Counsel Calvert is an outline of the remedy options you seek for what has happened. Is reinstatement a possibility? Possible financial coverage for another school that offers you a degree or certification in the field you pursued? Your money back for the expenses you incurred during the school process? There may be other options but this will assist him in ascertaining what is the "get" you seek after all has been done.

I am certain that General Counsel Calvert will contact after he has reviewed the materials I provided and prior to his efforts to reach out to Parker University.

Good luck on your upcoming job interviews.

Chester

ATTORNEY-CLIENT PRIVILEGE

This e-mail is covered by the Electronic Communications Privacy Act, Sections 2510 et. Seq. and is legally privileged. Additionally, this message and any attachments to it may contain PRIVILEGED AND CONFIDENTIAL INFORMATION and is intended only for use of the specific individual(s) to which it is addressed. If you are NOT an intended recipient of this e-mail, you are hereby notified that any unauthorized use, dissemination of copying of the e-mail and of the information contained in it or attached to it is STRICTLY PROHIBITED. **If you have received**

Case 3:18-cv-01617-BN   Document 25-12   Filed 12/19/18   Page 2 of 5   PageID 119

**this e-mail in error, please delete it or immediately notify the person named above by reply e-mail.**

Although this e-mail and any of the attachments are believed to be free of viruses or other defects that might affect other computer systems, **it is the responsibility of the recipient to ensure that it is virus free and sender disclaims all responsibility for any loss or damages arising from its use.**

**From:** Daniel Caldwell [mailto:dcaldwell@aggienetwork.com]
**Sent:** Monday, December 15, 2014 3:33 AM
**To:** Beattie, Chester
**Subject:** Re: 06152021 complaint against Parker University

Mr. Beattie,

When you are ready to call with the outcome of your meeting Friday with the ICUT general counsel, be advised that I have 2 job interviews today to teach at charter schools, from 9-10am and 1-2pm, so I might not be able to answer my phone if you call during those windows.

If you prefer to make a written summary, I will let you know when I see that.

Thank you for working with me,

DC


DCaldwell@AggieNetwork.com

http://DanielJCaldwell.webs.com/

512-761-5740


On Sat, Nov 8, 2014 at 8:46 AM, Daniel Caldwell <dcaldwell@aggienetwork.com> wrote:

> Greetings,
> The purposes of this message are (1) to provide supplemental
> information which may assist to invoke the jurisdiction and assistance
> of the Dept. of Education Office of Civil Rights because I do qualify
> as having a disability under Section 504 of the Rehabilitation Act of
> 1973, which prohibits discrimination on the basis of disability and

(2) to request examination by Independent Colleges and Universities of Texas, Inc., into Dr. Brian McAulay's refusal to provide a response to my complaint of abuse of discretion by the Provost.

(1) To support my first assertion, I have been receiving services through/from DARS (the Texas Department of Assistive and Rehabilitative Services, with Edwin Castillo as my counselor) since shortly after, and as a consequence of, being dismissed from Parker. The Dean of Student Affairs knew about my disability because I had provided a copy of my most recent evaluation to his office in October 2013 when I requested counseling assistance for personal problems.

(2) To support my second assertion, and because I believe I neglected to provide them previously, attached are a copy of the Parker University Doctor of Chiropractic Catalog 2013-2014 and Student Handbook in effect at the time of expulsion.

The Provost made the ruling that, in order to receive my transcript, I would be required to pay to the university $6,444 although I owed no balance when expelled.

Page 50 of the catalog says, "For students who received federal financial assistance and the student has completed 60% or less of the trimester, the refund shall be based upon the percentage of the trimester that has been completed. (...) The Office of Financial Aid uses the Department of Education's Return of Title IV funds calculator to determine the amount the student has earned and processes a return for the unearned portions."

As a refund, no balance would be owed, so that decision contradicts the published policy.

And, upon showing that the university violated due process rights and rendered a wrongful dismissal, the entire amount of the summer tuition should have been refunded.

Also, for brief discussion and analysis, I am re-submitting the 1st-4th exhibits attached to my complaint to the Parker University President in PDF format.

The university's established procedure is laid out on pages 119-120 of the catalog and 23-25 of the handbook.

In relevant part, "The Dean of Student Affairs conducts an investigation to determine if the charges have merit", "The student(s) will be a) advised of the charges, b) given the opportunity to respond to the charges, and c) present documentation and/or witnesses to support their response", and "after careful consideration of the preponderance of evidence, the committee will determine by a majority vote, what disciplinary action, if any, is warranted."

With these standards, the vague charges are then examined separately and then together, in chronological order and that listed on catalog p.117 and handbook pp.21-22:

E - Attempted or actual theft and/or damage to the property of the University or property of any student, faculty, or staff member.

For the investigation from Mr. Stamp's report, there is no allegation of attempted or actual theft of property, nor attempted damage to property, but only an assertion of actual damage.

Upon examining the five (5) pictures of the recovered chair, the distribution of scratches shows that it has wear and tear from several months of exposure, but no areas of abrasion that would occur from

being dragged, so the determination that it was dragged for any distance, as opposed to set, is a stretch of the imagination.

Notably, the largest patch of missing paint corresponds to the height of the iron table that it was paired with, indicating slight damage from reasonable use just by being put away.

Furthermore, from a common reading of the term "damage", meaning "physical harm caused to something in such a way as to impair its value, usefulness, or normal function", the value, usefulness, and normal function of the chair cannot be deemed impaired by any minor scratch(es) that might have been caused.

On the contrary, having succeeded at demonstrating a novel application for the chair, its potential usefulness was actually enhanced.

Furthermore, experimenting in that fashion to discover if the operation would be successful is not bizarre but creative.

From Mr. Stamp's report, the preponderance of evidence does not show that any disciplinary action was warranted.

I - Physical abuse/assault, verbal abuse, threats, intimidation, harassment, coercion and/or other conduct which threatens or endangers the health or safety of any person.

For the investigation from Jennifer Castille-Powell's complaint (redacted), sexual harassment was alleged, and the other potential policy violations (physical or verbal abuse/assault, threats, intimidation, coercion, endangerment) were not.

Besides the state's legal definition of harassment (Texas Penal Code 42.07), the university defines sexual harassment as a type of discriminatory harassment on catalog p.54 and handbook p.40, "conduct (oral, written, graphic, or physical) directed against any person or group of persons because of race, color, national origin, religion, sex, sexual orientation, age, disability or veteran's status and that has the purpose or reasonably foreseeable effect of creating an offensive, demeaning, intimidating, or hostile environment for that person" and "sexual harassment includes unwelcome sexual advances, requests for sexual favors, and other verbal or physical conduct of a sexual nature".

The witness statement provided defended me as having done nothing directed at Jennifer for any reason other than that she was in my line of travel and nothing to create an offensive, demeaning, intimidating, or hostile environment, nor anything of a sexual nature, entirely ruling out sexual harassment.

Not until today did I realize that the Student Handbook enormously expands the scope and hypersensitivity of the zero tolerance policy against harassment by adding, on page 41, ""members of the University community may exhibit a pattern of engaging in [harassing] conduct by failing to realize that their actions discomfort or humiliate other persons", "If a person continues to engage in such conduct after receiving a reprimand, instruction or educational program, their continuation of such conduct may be deemed to be an intentional pattern of conduct intended to discomfort", and "may subject that person to severe disciplinary action."

Under this broader definition, it becomes possible (although still unreasonable given the witness's statement) to claim harassment for my failure to realize I caused discomfort because I had in April been

required to complete a non-specific approved workshop/seminar on Understanding Personal and Social Boundaries, although that was not included in the record, no reason had been given for why, and the timely appeal of that requirement (for having no explanation given) has not been not answered.

The question for whether the allegation had merit is: Did the totality of the circumstances in the context of a chiropractic college classroom reasonably constitute harassment?

No records were submitted to support the complaint beside the witness statement, and the witness statement presents the observation that I consistently responded to others' expressed wishes when communicated, in contrast to the complainant's position.

Finally, Jennifer mentioned residual trauma from other people molesting her in the past, which indicates the most probable explanation for her reaction is negative transference.

Taken together, the incidents would not be a violation of university policy under the Academic and Professional Standards Committee but instead should have been subject to review by the Involuntary Withdrawal Committee as problems with social/emotional perception. However, in that venue, I would have fared better because the Counseling Office staff members were already familiar with me and my background to know I am caring and mentally and emotionally stable.

Mr. Ballesteros's, the Dean of Student Affair's choice to refer to the wrong review board and one that would not accommodate for the disability was the first deprivation of due process.

The Dean of Student Affair's action to provide same-day emailed notice (6:56 am) of a lunch-hour hearing (1:00 pm) on a day when I was in classes the four previous hours substantially deprived me of any chance to ask and understand what I was accused of, any real opportunity to to respond beyond a general denial, and any time to prepare a statement for my defense, compounding the issue.

When the Dean of Student Affairs returned a decision that the APS Appeals Committee denied to hear any appeal before the accusation was even clear, I complained against him to the Interim VP of Academic Affairs, Dr. Celia Maguire.

When she upheld the decision as being consistent with due process, I appealed to the Provost.

His decision adding the refusal to release my transcript was abuse of discretion.

The Parker University President's refusal to acknowledge or respond to my complaint against the Provost was dereliction.

I can only speculate that Mr. Ballesteros's leaving from Parker University in August was more than coincidence.

Hopefully this helps and make's sense as a start for reviewing the case. Please let me know if you see any important missing facts or have advice to help my case,
DC
DCaldwell@AggieNetwork.com
http://DanielJCaldwell.webs.com/
512-761-5740