# No decision received, address update

---

**Daniel Caldwell** <dcaldwell@aggienetwork.com>  Tue, May 2, 2017 at 4:40 PM
To: "Gilmore, Sharon A." <SharonA.Gilmore@ed.gov>

My appeal today re-sequences, in order to place thoughts in the organizational structure requested as nearly as feasible, the contents of the e-mail I sent  Friday, March 10, 2017 12:55 PM **To:** Gilmore, Sharon A.**;** Malonson, Melissa **Subject:** Re: No decision received, address update.

With minimal repetition of the documents I previously submitted, I am attaching the following items in order to support the assertions in my appeal, af fax of which is being sent today. The attachments below are also available at the corresponding link addresses.

Student Handbook 13-14 DC-BS(A).pdf

(971K)
https://drive.google.com/open?id=0B8TSjCQ4kGI_OHBEemxjcWxQZjQDC Program-04-24-2014.pdf

(2,026K)
https://drive.google.com/open?id=0B8TSjCQ4kGI_aU9WZ0JuUllNbX ozUkU4MXkxU05mRmg1QXk4
Addenda-OCR-Appeal-06152021.pdf

(859K)
https://drive.google.com/open?id=0B8TSjCQ4kGI_TkJZaFZjaFZhMms
Appeal-OCR-decision-06152021.pdf

(80K)
https://drive.google.com/open?id=0B8TSjCQ4kGI_Q3g5TVdSTzVMQnM
Catalog-p115-118.pdf

(399K)
https://drive.google.com/open?id=0B8TSjCQ4kGI_SXJUWEowMWVGbzA
Mail - Fwd_ Daniel as Chiropractor.pdf

(70K)
https://drive.google.com/open?id=0B8TSjCQ4kGI_YXM5VkhGaDdqV2M
Mail - I Don't Know -- But it Seems to Me.pdf

(76K)
https://drive.google.com/open?id=0B8TSjCQ4kGI_RFd4cHdveWt2dnc
DCaldwell-april.pdf

(969K)
https://drive.google.com/open?id=0B8TSjCQ4kGI_ZWlhMTVXcVNMU2M
Mail - Transcript.pdf

(109K)
https://drive.google.com/open?id=0B8TSjCQ4kGI_cUNvQkxGN1hIaGc

The four points you said I must cover are as follows:

(1) the factual information was incomplete,

(2) the analysis of the facts was incorrect,

(3) the appropriate legal standard was not applied, *and*

(4) how this would change OCR's determination in the case

(1)  FACTS (in order specified in section 2)

a. I had requested meetings regularly **since October 2013 with Dr. Jacquelyn Elbel, Ph.D., so this conclusion is not quite accurate, and although the e-mails to document the earliest, sent and received from my Parker.edu e-mail address, have been withheld by Parker, I am attaching e-mails from February and March to/from Dr. Elbel.**

b. The north gate of campus had (has?) a magnetic sensor that is activated by the presence of an iron frame, so, besides being a highly awkward tool for prying, I did not drag a chair nor use the chair to pry the gate open.

c.  The April 15, 2014, decision letter, which includes the following sanction: "prohibited from representing your Tri in any leadership position until further notice."

d.  The PU Student Code of Conduct specifies that "(G) . . . c. Failure to comply [and] d. Failure to heed an official notice [and] (U) . . . 1. Failure to comply with a directive" (DC catalog pp.117-118, Student Handbook pp. 21-22) are separate and distinct punishable violations of the SCC.

e.  The allegations were not specified to me until after the appeal was denied.

f.  The Security Supervisor is responsible for administering the first 3 issues in the petition I circulated, and the incident with the sleeping guard (which would make his whole department look bad) consisted of taking a picture as I walked by and posted it on the class Facebook page for the sake of humor.

The petition asked for four things: (1) that the main gate schedule be changed from 9am-5pm to 6am-9am to accommodate arrival of students for morning classes; (2) that the buildings be unlocked within 45 minutes of when they were scheduled to be open (6:00am) so that students can enter to get situated for 7:00am classes; (3) resuming the daily PA announcement of when the bridge gates to the annex parking lot were being locked so that students staying late would not have to walk an extra four blocks the long way around campus to get to their cars; and (4) to allow installation of sign holders outside classroom doors to hold flyers for special events instead of having staff just tape signs to the doors and walls.

(2) ANALYSIS

a. On page 3 of your determination letter, you said I did not "request accommodations," so this assumption is inaccurate.

b.  Next, in the Legitimate Nondiscriminatory Reason section, you said that I was found accused of, among other exaggerated claims, dragging a chair to the north gate "to pry it open,"

I am dumbfounded where you got this grossly mistaken impression from.

c.  In the next sentence, you said, "that during the hearing in April, the APSC made the following decision: No sanctions."

This assertion is contrary to the evidence, which shows that I was specifically the subject of multiple Discretionary Sanctions as described in the Disciplinary Actions lists on p. 115 of the DC program catalog and p. 20 of the Student Handbook.

d.  You further said, "Worth noting, is there was no condition placed on the APSC's findings (i.e., there was no sanction if you failed to complete the committee recommendations)." This is incorrect, as the condition of compliance on continued enrollment was explicit in policy, making this observation patently inaccurate.

e.  You said later in that paragraph that "[s]pecifically, the Minutes reflect that [I was] notified of the charges against [me]."

I do not see how you made this finding.

Where does the record show that I was informed of the particular/actual charge against me before the appeal was denied?

f.  On page 4 of your letter, you referenced "a petition . . . recommending termination of a security guard found sleeping," which seems to confuse the history.


(3) STANDARD

In lay terms, you have to be kidding me to say that I was legitimately "provided an opportunity to Appeal" where there was no indication of what charge(s) I was supposed to have defended against.

These wildly erroneous findings that indicate you did not understand the case against me.

Besides being generally dissatisfied with the overall conclusion, your letter specifically fails to note that Parker's adverse treatment subsequent to my dismissal did not conform to the University policy and procedures.

Namely, the University did not follow its published Refund Policy in its then-current 2013-2014 catolog:

"For students who received federal financial assistance and the student has completed 60% or less of the trimester, the refund shall be based upon the percentage of the trimester that has been completed." (page 50)

"Should the original complaint involve the Provost, the President will render a final decision." (page 121)

The University denied that there would be any refund, and the Provost instead (e-mail attached) assessed a debt to my student account of $6,444, refusing to release my final transcript, which I requested repeatedly in writing between July 2014 and April 2016.

Case 3:18-cv-01617-BN   Document 25-15   Filed 12/19/18   Page 4 of 6   PageID 132

This too, was discriminatory, and you have the record of my complaint to the University President of this separate maltreatment, but you apparently failed to recognize it as a separate actionable issue.

I was not just complaining of dismissal, but I was also complaining of the withholding of my academic record.

For those two years following dismissal, I was not able to mitigate damages by transferring to any other graduate institution, and they still will not release my record for degree-seeking admission actually related to the chiropractic program courses I had taken.

As it appears to have been completely missed, was this point evaluated at all in your determination?

ISSUE:

Whether PU discriminated against me on the basis of disability when, on July 21, 2014, the Provost determined that, in order to obtain my transcript after being withdrawn with no balance owed to the University, I would be required to pay $6,444 in order to be able to procure a copy of my transcript, and to which no response was given on complaint to the PU President, having no legitimate nondiscriminatory reason for violating the University's Refund Policy, and thereby subjecting me to different treatment than similarly situated nondisabled students, in violation of Section 504, at 34 C.F.R. Sec. 104.43?

If so, the decision should be reversed.


(4) DETERMINATION

I have to ask some concerning questions, substantially presented in my original appeal Friday, June 21, 2014, (in twelve points there instead of ten):

1. Since I have not been allowed to review them for myself, do the minutes reflect that I was charged with "physical abuse"?

2. Since I have not been allowed to review them for myself, do the minutes reflect that I was charged with "assault"?

3. Since I have not been allowed to review them for myself, do the minutes reflect that I was charged with "verbal abuse"?

4. Since I have not been allowed to review them for myself, do the minutes reflect that I was charged with making "threats"?

5. Since I have not been allowed to review them for myself, do the minutes reflect that I was charged with "intimidation"?

6. Since I have not been allowed to review them for myself, do the minutes reflect that I was charged with "harassment"?

7. Since I have not been allowed to review them for myself, do the minutes reflect that I was charged with "coercion"?

8. Since I have not been allowed to review them for myself, do the minutes reflect that I was charged with "other conduct which . . . endangers the health or safety of any person"?

9. Since I have not been allowed to review them for myself, do the minutes reflect that I was charged with "[a]ttempted or actual theft"?

10. Since I have not been allowed to review them for myself, do the minutes reflect that I was charged with "damage to . . . property"?

Did the OCR determine that the APSC was considering all or any of these violations of the Student Code of Conduct?

If so, which one(s), because I still do not have an answer to these questions after almost 3 years?

If not, the decision should be reversed.

If the issue presented in section 3 above is answered in the affirmative, the OCR decision should be reversed.

Is the OCR going to correct any of these mis-statements of facts, analysis, or conclusions?


DCaldwell@AggieNetwork.com
http://DanielJCaldwell.webs.com/
512-761-5740


[Quoted text hidden]
>   [Quoted text hidden]
>
>   DCaldwell@AggieNetwork.com
>   http://DanielJCaldwell.webs.com/
>   512-761-5740
>
>
>   [Quoted text hidden]
> >   [Quoted text hidden]
> >
> >   [Quoted text hidden]
> >
> >   Individually, I would also like to address some of the findings and determinations you did make.
> >
> >   [Quoted text hidden]

**9 attachments**

**DC Program-04-24-2014.pdf**
2026K

**Addenda-OCR-Appeal-06152021.pdf**
859K

**Appeal-OCR-decision-06152021.pdf**
80K

**Catalog-p115-118.pdf**
399K

**Mail - Fwd_ Daniel as Chiropractor.pdf**
70K

**Mail - I Don't Know -- But it Seems to Me.pdf**
76K

**DCaldwell-april.pdf**
969K

**Mail - Transcript.pdf**
109K

**Student Handbook 13-14 DC-BS(A).pdf**
971K